IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOY J. BRITT and ADA W. JONES, )
Individually and on behalf of all similarly )
situated persons, )
)
    Plaintiffs, )
v. )
) NO. 3:03-0422
PRIMUS AUTOMOTIVE FINANCIAL ) JUDGE HAYNES
SERVICES, INC. d/b/a )
MAZDA AMERICAN CREDIT and )
FORD MOTOR CREDIT COMPANY, )
)
    Defendants. )

## MEMORANDUM

Plaintiffs, Joy J. Britt and Ada W. Jones, Kentucky citizens, individually and on behalf of all similarly situated persons, filed this action under 28 U.S.C. §§ 1331, 1332 and 1367 against Defendants Primus Automotive Financial Services, Inc. d/b/a Mazda American Credit, a New York corporation with its principal place of business in Tennessee, and Ford Motor Credit Company (collectively "Mazda American Credit" or "MAC"), a Delaware corporation. Plaintiffs assert class claims of intentional infliction of emotional distress, negligence, recklessness, breach of contract, and breach of warranty of title in violation of Tennessee common law, as well as claims under the civil Racketeer Influence and Corrupt Organization statute ("RICO"), 18 U.S.C. §§ 1961 et seq.[1]

---

[1] Plaintiffs seek to amend their Third Amended Class Action Complaint, (Docket Entry No. 104), to assert the RICO claims on behalf of the entire class. (Docket Entry No. 171). Plaintiffs added their RICO claims after the Court certified the class. See Docket Entry Nos. 93 and 94. As a consequence, the RICO claims were neither analyzed by the Court under Federal Rule of Civil Procedure 23(a) nor listed in the notice to the class. See Docket Entry No. 106.
    During a pretrial conference with counsel on June 17, 2005, the Court advised the parties that in order for the RICO claims to apply to the entire class, the Court must analyze the claims under Rule 23. Accordingly, the parties were ordered to submit pleadings on the issue of certification of the RICO claims. See Docket Entry No. 220, Clerk's Resume June 17, 2005.

The gravamen of Plaintiffs' complaint is that MAC directed Mazda of Clarksville, a Tennessee automobile dealership from whom the named Plaintiffs purchased new automobiles, to not pay the liens on Plaintiffs' trade-in vehicles and instead to pay MAC the full amount of the resale.

Plaintiffs' claims arise from MAC's conduct in its relationship with Mazda of Clarksville. Mazda of Clarksville financed all of its vehicles through MAC by use of a "floorplan agreement." In February 2003, MAC discovered Mazda of Clarksville was "out of trust" by over $858,000.00, and as a result, it took control of the dealership and diverted all of Mazda of Clarksville's proceeds to pay the "out of trust" debt to MAC. Among these proceeds were the sale proceeds of the automobiles in Mazda of Clarksville's inventory.

The Plaintiff class members purchased vehicles from Mazda of Clarksville with a trade-in vehicle as part payment that had outstanding liens. These liens were to be paid off as part of the purchase. Plaintiffs allege that Defendants exercised control of the Mazda of Clarksville dealership beginning on or about February 11, 2003, and thereafter engaged in a combination, conspiracy, plan and agreement or through ratification to cause the liens on Mazda of Clarksville's purchasers' trade-in vehicles not to be paid off. In addition, Mazda of Clarksville failed to pay the appropriate sales tax on these newly purchased vehicles.

In a word, MAC received from Mazda of Clarksville the gross proceeds of the sale of an item of Mazda of Clarksville's inventory without Mazda of Clarksville first settling its trade-in lien and tax obligations. Plaintiffs contend that MAC effectively took control of Mazda of Clarksville, and that Mazda of Clarksville failed to pay off the liens and taxes in favor of MAC as either the agent of MAC acting under its direction or as its co-conspirator to so divert the lien proceeds. In the alternative, Plaintiffs contend that Defendants ratified Mazda of Clarksville's conduct. As a

consequence, Plaintiffs have suffered economic and physical damage.

Before the Court are Defendants' motions for summary judgment on Plaintiffs' class claims (Docket Entry No. 152) and Plaintiffs' RICO Claims (Docket Entry No.157).[2] In their motion on the class claims, Defendants contend, in sum: (1) that MAC's actions, taken as a secured creditor of Mazda of Clarksville, do not rise to the level of outrageousness required to support a claim for intentional infliction of emotional distress; (2) that Mazda of Clarksville is not vicariously liable for the actions of Mazda of Clarksville as a matter of law; (3) that the undisputed facts preclude a breach of contract claim against MAC; (4) that Plaintiffs cannot establish negligence or recklessness claims against MAC; and (5) that Plaintiffs' breach of warranty of title claim fails for the same reasons that their breach of contract claim fails. In their motion regarding Plaintiffs' RICO claims, Defendants contend that Plaintiffs cannot establish any of the elements of the alleged predicate act.

In their responses (Docket Entry Nos. 173 and 174), Plaintiffs contend that there exist material factual disputes regarding each of their claims, particularly due to factual disputes regarding an alleged agency relationship or conspiracy between MAC and Mazda of Clarksville.

Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). Upon the filing of a motion for summary judgment, the opposing party must

---

[2] As noted in note 1, supra, the RICO claims do not yet apply to the entire class. Nevertheless, the Court concludes it is appropriate to evaluate Defendants' motion to dismiss the RICO claims. Indeed, the Sixth Circuit has "consistently held that a district court is not required to rule on a motion for class certification before ruling on the merits of the case." Miami Univ. Wrestling Club v. Miami Univ., 302 F.3d 608, 616 (6th Cir. 2002). Accordingly, the Court's findings and conclusions in this Memorandum as to whether Defendants are entitled to summary judgment on Plaintiffs' RICO claims are unrelated to the issue of class certification of those claims.

3

come forth with sufficient evidence to withstand a motion for a directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

As a threshold matter, Plaintiff's state law claims depend upon whether a reasonable jury could find that Mazda of Clarksville and/or Ronald McKinney acted under the direction of MAC as its agent or pursuant to a conspiracy with MAC. Under Tennessee law, "[w]hen an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency. . . . To hold the master/principal vicariously liable [for the acts of the agent], it is enough that the servant or agent was acting in the business of his superior." Johnson v. LeBonheur Children's Med. Ctr., 74 S.W.3d 338, 343 (Tenn. 2002) (internal quotation and citations omitted). The creation of an agency relationship does not require a contract, an explicit agreement, or an understanding of the parties. White v. Revco Discount Drug Ctrs., Inc., 33 S.W.3d 713, 724 (Tenn. 2000). "The existence of an agency relationship . . . is a question of fact under the circumstances of the particular case, and in determined by examination among the parties or of the parties' actions." Johnson, 74 S.W.3d at 343 (internal quotation and citations omitted). Moreover, the principal's right to control the acts of the agent, and the amount of control actually exercised by the principal over the agent are relevant factors in determining the existence and scope of an agency relationship. Id.

Further, in Tennessee, a civil conspiracy "is defined as a 'combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means.'" Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001) (quoting Cheneault v. Walker, 36 S.W.3d 45 (Tenn. 2001)). As further described by the

Tennessee Supreme Court:

> Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent. The agreement need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy. Finally, it is a basic principle that each conspirator is responsible for everything done by his confederate which the execution of the common design makes probable as a consequence; in other words, each conspirator is liable for the damage caused by the other.

Id. (internal quotations and citations omitted).

The Court finds there exists facts from which a reasonable jury could conclude that an agency relationship or a conspiracy existed between MAC and Mazda of Clarksville and/or its owner, Ronald McKinney. (Docket Entry No. 174, Plaintiffs' Response to Defendants' Statement of Undisputed Facts at ¶¶ 4, 5, 11, 12, 15, 19-28, 31-52, 56, 58-60, 64, 67-79, 83-93, 95-101, 104-111; Docket Entry No. 189, Defendants' Responses to Plaintiffs' Statement of Additional Undisputed Facts at ¶¶ 1-6, 8-50). In this regard, the Court notes that in a related case before this Court, the issue of whether Mazda of Clarksville and/or Ronald McKinney acted at the direction of MAC as its agent or in furtherance of a conspiracy with MAC was submitted to the jury. (First Federal Savings Bank v. Old National Bank, Case No. 3:03-01260, Docket Entry No. 399, Court's Instructions to the Jury at 22-24, 30). As a consequence, a reasonable jury could find MAC liable for the actions of Mazda of Clarksville and/or Ronald McKinney against Plaintiffs.

Under Tennessee law, the tort of intentional infliction of emotional distress or outrageous conduct allows a plaintiff to seek recovery "for mental or emotional disturbance alone, unconnected with any independently actionable tort or with any contemporaneous or consequential objectively ascertainable injury.' " Doe 1 v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 31 (Tenn. 2005) (quoting Medlin v. Allied Inv. Co., 398 S.W.2d 270, 272 (Tenn. 1966). In order to assert a

valid claim of intentional infliction of emotional distress or outrageous conduct, a plaintiff must establish: (1) that the conduct complained of is intentional or reckless; (2) that "the conduct [is] so outrageous that it is not tolerated by civilized society"; and (3) that the conduct complained of is the proximate cause of a "serious mental injury." Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997); Doe 1, 154 S.W.3d at 31.

A plaintiff need not present expert testimony of a "serious mental injury"; rather, a plaintiff may present other proof to establish a "serious mental injury", such as the plaintiff's "own testimony . . . as well as the testimony of other lay witnesses acquainted with the [plaintiff]." Miller v. Willbanks, 8 S.W.3d 607, 615 (Tenn. 1999). Moreover, "[p]hyiscal manifestations of emotional distress may . . . serve as proof of serious mental injury. . . . [E]vidence that a plaintiff has suffered from nightmares, insomnia, and depression or has sought psychiatric treatment may support a claim of a serious mental injury." Id. Indeed, "[t]he intensity and duration of the mental distress are also factors that may be considered in determining the severity of the injury." Id.

A finding of negligence requires the existence of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss to the plaintiff; (4) the defendants' conduct was the cause in fact of plaintiffs' alleged injuries; and (5) defendants' conduct was the proximate or legal cause of plaintiffs' alleged injuries. Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993). A finding of recklessness is appropriate upon a finding of negligence if a plaintiff demonstrates that the defendant "is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under the circumstances." Hodges v. S.C. Toof &

Co., 833 S.W.2d 896, 901 (Tenn. 1992).

A breach of warranty of title claim arises from the statutory principle that in every contract for a sale of goods, there is "a warranty by the seller that: (a) the title conveyed shall be good, and its transfer rightful; and (b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge." Tenn. Code Ann. § 47-2-312(1).

Generally, recovery for breach of contract and breach of warranty actions are limited to the economic losses suffered by the plaintiff, and not tort damages. Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.2d 159, 172-73 (Tenn. Ct. App. 2001). However, a plaintiff can recover in tort when the underlying action arises from a breach of contract or warranty "when there is either personal injury or damage to 'other property' which was not a party of the contract for sale." Id. at 173 (footnote and citation omitted). Of course, "although the plaintiff may plead and go to the jury on theories of breach of contract and tort, he is limited to a single recovery for the harm which he has suffered." 3 Am. Jur. Trials 637 at § 1.

Based upon the parties' respective statements of undisputed facts and their responses thereto, the Court concludes that material factual disputes exist that could establish the elements of Plaintiffs' state law claims. (Docket Entry No. 174, Plaintiffs' Response to Defendants' Statement of Undisputed Facts at ¶¶ 19-28, 31-34, 41, 45, 56, 58-60, 64, 76, 85-93, 95-101, 104-115; Docket Entry No. 189, Defendants' Responses to Plaintiffs' Statement of Additional Undisputed Facts at ¶¶ 1-6, 8-50). These factual disputes require a jury determination. Further, the Court concludes that genuine issues of fact and law exist as to whether Defendants had priority over or even a security interest in the trade-in vehicles. Docket Entry No. 174 at ¶¶ 4-5; Tenn. Code Ann. §§ 47-2-403(1),

47-9-203, 47-9-311(a)(2), and 47-9-315(a); In re Armstrong, 56 B.R. 781 (W.D. Tenn. 1986). see also First Nat'l Bank of the North v. Auto. Fin. Corp., 661 N.W.2d 668, 672 (Minn. Ct. App. 2003); CIT Group/Sales Fin'g, Inc. v. E-Z Pay Used Cars, Inc., 32 P.3d 1197, 1202 (Kan. Ct. App. 2001). As such, summary judgment is inappropriate as to Plaintiffs' state law claims against MAC.

Tennessee, allows punitive damages "in cases involving fraud, malice, gross negligence, oppression, evil motives, conscious indifference, and reckless conduct implying disregard of social obligations." Hodges, 833 S.W.2d at 900-01 (internal quotation omitted). Punitive damages may be awarded if upon a finding that the defendant has acted either intentionally, fraudulently, maliciously, or recklessly. Id. at 901. Here, Plaintiffs assert claims of intentional infliction of emotional distress and recklessness. These claims require jury findings of intent and recklessness, respectively. Thus, if the jury finds MAC liable on these claims, punitive damages may be appropriate. Accordingly, the Court concludes that summary judgment should be denied as to the issue of punitive damages.

As to First Federal's civil RICO claims, a valid cause of action exists only when a plaintiff establishes "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 469, 496 (1985) (footnote omitted); see also 18 U.S.C. § 1962(c). The civil RICO statute also prohibits the conspiracy to violate any of its provisions. 18 U.S.C. § 1962(d). Further, a plaintiff must demonstrate that the defendant has committed or has conspired to commit predicate acts "that amount to, or . . . otherwise pose a threat of continuing racketeering activity. . . ." H.J., Inc. v. N.W. Bell Telephone Co., 492 U.S. 229, 240 (1989). Plaintiffs contend that MAC violated the civil RICO statute by violating 18 U.S.C. § 2314, which requires proof that a defendant: "(1) transport[ed], or caus[ed] the transportation, (2) in interstate

commerce, (3) of property valued at $5,000 or more, (4) with knowledge that it has been stolen, converted, or fraudulently taken from its rightful owner." United States v. Monus, 128 F.2d 376, 384 (6th Cir. 1997).

The record in this case demonstrates genuine factual issues from which a reasonable jury could conclude that MAC, either by directing Mazda of Clarksville to act as its agent or with Mazda of Clarksville as its co-conspirator, violated 18 U.S.C. § 2314, and that such a violation was a substantial cause of the named Plaintiffs' injuries. (Docket Entry No. 174, Plaintiffs' Response to Defendants' Statement of Undisputed Facts at ¶¶ 4, 5, 11, 12, 15 31-52, 56, 58-60, 64, 67-79, 83-93, 95-101, 104-115; Docket Entry No. 189, Defendants' Responses to Plaintiffs' Statement of Additional Undisputed Facts at ¶¶ 1-6, 8-50). As a consequence, summary judgment is inappropriate for First Federal's civil RICO claims.

Based upon the foregoing, Defendants Primus Automotive Financial Services, Inc. d/b/a Mazda American Credit's and Ford Motor Credit Company's motions for summary judgment on Plaintiffs' class claims (Docket Entry Nos. 152) and RICO claims (Docket Entry No. 157) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 8th day of July, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge